**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| FRASHARD KNOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 21-cv-00592-LKG |
| v. ) | |
| ) | Dated: July 27, 2023 |
| MCDONALD'S RESTAURANT OF ) | |
| MARYLAND, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff, Frashard Knott, brings this employment discrimination action alleging claims of a hostile work environment and retaliation against Defendant, McDonald's Corporation of Maryland, Inc. ("McDonald's"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). *See generally*, ECF No. 1. McDonald's has moved for summary judgment on Plaintiff's remaining claims, pursuant to Fed. R. Civ. P. 56. ECF No. 45. This motion is fully briefed. ECF Nos. 1, 45, 53, 57. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court (1) **GRANTS** McDonald's motion for summary judgment and (2) **DISMISSES** the complaint.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

In the remaining claims of this employment discrimination action, Plaintiff, Frashard Knott, alleges that Defendant, McDonald's Corporation of Maryland, Inc., discriminated and retaliated against him upon the basis of sex, while he was employed at McDonald's. *See* ECF No. 1 ¶¶ 8-10, 12, 25-26, 28, 31. Plaintiff's remaining claims in this action are for a hostile work environment and retaliation claim. *See id*. As relief, Plaintiff seeks, among other things, to recover punitive and compensatory damages from McDonald's. *Id*.

Plaintiff's Discrimination Allegations

As background, Plaintiff is a 22-year-old male residing in Maryland. *Id.* ¶ 7. Plaintiff began working for McDonald's as a Crew Member/Cashier in May 2019, at the McDonald's located on Bryans Road in Charles County, Maryland. *Id.* Plaintiff was supervised by Dormani Gamble ("Ms. Gamble") at the Bryans Road location. *See* ECF No. 53 at 3. On July 2, 2020, McDonald's terminated Plaintiff's employment. *Id.* ¶ 45.

Plaintiff alleges that he was subjected to multiple acts of discriminatory conduct while employed by McDonald's. *Id.* ¶¶ 5, 11, 15-17.

First, Plaintiff alleges that, on June 5, 2020, Ms. Gamble said directly to him, "Why is this faggot ass bitch even talking to me?" *Id.* ¶ 5. Plaintiff also alleges that he was angered by Ms. Gamble's homophobic remark, and he pursued Ms. Gamble's car to confront Ms. Gamble and to ask her: "Why would you call me a faggot? What would make you call me something like that? You're a supervisor." *Id.* ¶ 6.

Second, Plaintiff alleges that, on June 9, 2020, Ms. Gamble removed him from the work schedule after Ms. Gamble made her homophobic remarks. *Id.* ¶ 11; ECF No. 1 ¶ 9.

---

[1] The facts recited in this memorandum opinion and order are taken from the complaint (ECF No. 1); McDonald's motion for summary judgment (ECF No. 45); the memorandum in support thereof (ECF No. 45-2); Plaintiff's response in opposition to McDonald's motion for summary judgment (ECF No. 53); and McDonald's reply (ECF No. 57).

Third, Plaintiff alleges that, during his shift at the McDonald's Rock n' Roll location in Waldorf, Maryland, another employee, "Chanel," told Plaintiff that Ms. Gamble referred to him as a "faggot." *Id.* ¶ 15.

Fourth, Plaintiff alleges that another McDonald's employee, "Tyler," texted him a rumor suggesting that Plaintiff wanted to engage in a sexual relationship with "Tyler." *Id.* ¶ 16. Plaintiff alleges that "Tyler" told him Ms. Gamble initiated the rumor. *Id.*

Finally, Plaintiff alleges that an employee, "Tangi," told another employee, "Christian," that "Tangi" overheard Ms. Gamble call Plaintiff a "faggot." *Id.* ¶ 17.

On June 17, 2020, Plaintiff complained to McDonald's human resources department and Operation Manager, Rodrigo Baires about Ms. Gamble's alleged discriminatory conduct. *Id.* ¶ 18. On June 26, 2020, Plaintiff was informed that he would be transferred to another McDonald's location. *Id.* ¶ 34.

Thereafter, Plaintiff was transferred to the Route 5 McDonald's located in Waldorf, Maryland restaurant. *Id.* ¶ 37. Plaintiff never went to work at the Route 5 McDonald's restaurant. ECF No. 45-3, Ex. A, Knott's Dep. 107:10-108:4; ECF No. 53-1, Ex. 17 at 161.

On July 2, 2020, Plaintiff was informed by Mr. Baires that McDonald's was terminating his employment. ECF 53-1, Ex. 17 at 160-161.

Plaintiff's EEOC Complaint

On August 17, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 1 ¶ 6; ECF No. 6, Ex. A at 2. Plaintiff's EEOC complaint states:

- I am an African American or Black male, and I began working for the above respondent on or about May 15, 2019. My position was Crew Member/Cashier. I was supervised by a woman named Dormani.

- On June 5, 20200, during a meeting with another manager and co-worker, my supervisor stated, "why is this faggot ass bitch even talking to me."

- On June 9, 2020, my supervisor removed me from the work schedule. She eventually told me not to come back to work.

3

- On June 17, 2020, I texted my General Manager and District Manager for a meeting to discuss the discrimination. During the meeting I complained about the discrimination to my General Manager and District Manager.

- I was terminated by McDonald's on July 4, 2020. I believe I was terminated in violation of Title VII of the Civil Rights Act of 1964.

ECF No. 53-1, Ex. 16 at 154. The EEOC dismissed Plaintiff's complaint on January 6, 2021, and issued a right to sue letter on that date. ECF No. 45-19, Ex. S at 2.

### B. Procedural History

Plaintiff commenced this matter on March 8, 2021. ECF No. 1. On October 28, 2021, the Court Granted-in-Part and Denied-in-Part McDonald's partial motion to dismiss and dismissed Plaintiff's Title VII claims based upon: (1) the allegation that a McDonald's human resources representative told Plaintiff to "stop acting like a victim" during a meeting held on June 22, 2020; (2) Plaintiff's three-day suspension; (3) Plaintiff's transfer to another McDonald's restaurant; and (4) the denial of Plaintiff's request for a transfer to a closer McDonald's restaurant. ECF No. 18.

On January 24, 2023, McDonald's filed a motion for summary judgment on Plaintiff's remaining claims, and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56. ECF No. 45.

On February 14, 2023, Plaintiff filed a response in opposition to McDonald's motion. ECF No. 53. On February 28, 2023, McDonald's filed a reply in support of its motion. ECF No. 57.

McDonald's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment, filed pursuant to Fed. R. Civ. P. 56, will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Bandy v. City of Salem, Virginia*, 59 F.4th 705, 709 (4th Cir. 2023). And so, if there clearly exist factual issues "that properly can be resolved only by a finder

of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Billingsley v. Fed. Home Loan Mortg. Corp.*, 849 F. App'x 413, 414 (4th Cir. 2021).

When ruling on a motion for summary judgment, "[t]he Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702 (4th Cir. 2023) (quoting *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020)). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See id*. at 702 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also* Fed. R. Civ. P. 56(c). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

      B.     **Title VII Claims**

The United States Supreme Court has characterized Title VII's charge filing requirement as a "non-jurisdictional claim-processing rule." *Fort Bend Cnty., Texas v. Davis*, 204 L. Ed. 2d 116, 139 S. Ct. 1843, 1844 (2019). While a non-jurisdictional processing rule does not give the Court jurisdictional grounds to hear a case, the rule is mandatory if "it require[s] parties to take certain procedural steps in, or prior to, litigation." *Id*. at 1844. And so, the Court must enforce the rule if it is timely raised. *See id*.

Relevant to the pending motion for summary judgment, the Title VII charged filing requirement directs plaintiffs (aggrieved persons) to file a charge of discrimination (administrative charge) with the EEOC prior to filing suit in court.  *See* 42 U.S.C. § 2000e-5(b).  The Fourth Circuit holds a plaintiff fails to exhaust his administrative remedies when his allegation in the administrative charge do not "reasonably relate[] to the factual allegations in the formal litigation . . . ."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citation omitted); *see also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (same); *see also Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019) ("[O]nly th[e] discrimination claims stated in the initial charge . . . reasonably related . . . and . . . developed by reasonable investigation . . . may be maintained in a subsequent Title VII lawsuit.").  And so, a Title VII plaintiff's claims are unexhausted (1) "if the administrative charge alleges one type of discrimination . . . and the claim encompasses another type . . ." or (2) if the "allegation of a discrete act or acts in an administrative charge . . . subsequently alleges a broader pattern of misconduct."  *Chacko*, 429 F.3d at 509 (citation omitted); *see also Walton*, 33 F.4th at 172-74 (noting that a discrimination claim cannot exceed the scope of the administrative charge).  And so, a Title VII plaintiff claims must be dismissed if their claims are not exhausted.  *See Walton*, 33 F.4th at 174.

Plaintiff asserts a hostile work environment claim in this case.  The United States Supreme Court has established that when determining if "an actionable hostile work environment claim exists," courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  And so, The Fourth Circuit has held that to sustain a hostile work environment claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex and/or race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (same); *see also Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 436 (D. Md. 2021) (plaintiff brought a Title VII hostile work environment claim after being called among other things a "faggot").

6

Lastly, the Title VII's anti-retaliation provision makes it unlawful "for an employer to discriminate against [an] . . . employee[] . . . because he has opposed any practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation . . . ." 42 U.S.C. § 2000e-3. And so, the Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or *via* the application of the *McDonnell Douglas* burden-shifting framework." *Roberts*, 998 F.3d at 122 (citation omitted). To that end, a Title VII plaintiff may prevail under the burden-shifting framework by showing that he: (1) "engaged in protected activity"; (2) "his employer took an adverse action against him"; and (3) that "a causal relationship exist[s]" between plaintiff's protected activity and the employer's adverse action. *See id*.

With regards to the showing of an adverse action, the Supreme Court has also held that a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse . . . which . . . means it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (explaining that the Supreme Court widened the scope of conduct that can constitutes an adverse action by an employer from solely conduct that affects an employee's "compensation, terms, conditions, or privileges of employment"). If a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted). And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

### IV.    ANALYSIS

McDonald's has moved for summary judgment in its favor on Plaintiff's hostile work environment and retaliation claims, pursuant to Fed. R. Civ. P. 56. Specifically, McDonald's argues that the undisputed material facts in this case show that: (1) Plaintiff did not exhaust his administrative remedies for his hostile work environment claim before commencing this action; (2) Plaintiff cannot show Ms. Gamble's alleged discriminatory conduct was unwelcomed or severe or pervasive, to prevail on his hostile work environment claim; (3) Plaintiff cannot show a causal relationship between his removal from the McDonald's work schedule and any protected

activity, to prevail on his retaliation claim; and (4) Plaintiff cannot show that McDonald's stated reasons for terminating his employment were a pretext for discrimination, to prevail on his retaliation claim. *See* ECF No. 45-2 at 3-20; *see also* ECF No. 57.

Plaintiff counters in his response in opposition that summary judgment is not warranted on his hostile work environment and retaliation claims, because: (1) he has exhausted his administrative remedies; (2) the undisputed material facts show that Ms. Gamble's alleged discriminatory conduct was unwelcomed and severe or pervasive; (3) there is a causal relationship between his termination and his informal complaint to McDonald's human resources department; and (4) McDonald's stated reasons for terminating his employment were pretextual. *See* ECF No. 53 at 12-20. And so, Plaintiff requests that the Court deny McDonald's motion for summary judgment. *See id*.

For the reasons that follow, the undisputed material facts in this case do not establish that Ms. Gamble's alleged discriminatory conduct was severe or pervasive, to support Plaintiff's hostile work environment claim. The undisputed material facts also show that Plaintiff cannot establish a causal relationship between his removal from the McDonald's work schedule on June 9, 2020, and his protected activity, to support his retaliation claim. In addition, the unrebutted evidence in this case shows that Plaintiff cannot show that McDonald's stated reasons for terminating his employment were a pretext for discrimination. And so, for the reasons that follow, the Court GRANTS McDonald's motion for summary judgment and DISMISSES the complaint.

### A. McDonald's Is Entitled To Summary Judgment On Plaintiff's Hostile Work Environment Claim

#### 1. Plaintiff Exhausted His Administrative Remedies

As an initial matter, McDonald's argues, without persuasion, that Plaintiff failed to exhaust his administrative remedies regarding his allegations that: (1) Ms. Gamble purportedly referred to Plaintiff as a "faggot" to other employees and (2) Ms. Gamble spread a rumor that Plaintiff wanted to engage in a sexual relationship with another male McDonald's employee. ECF No. 45-2 at 19. To satisfy Title VII's exhaustion requirement, Plaintiff's allegations in his administrative charge must "reasonably relate[] to the factual allegations in the formal

litigation." *Chacko*, 429 F.3d at 509 (citation omitted). In this case, it is undisputed that Plaintiff alleges in his EEOC complaint:

- I am an African American or Black male, and I began working for the above respondent on or about May 15, 2019. My position was Crew Member/Cashier. I was supervised by a woman named Dormani.

- On June 5, 20200, during a meeting with another manager and co-worker, my supervisor stated, "why is this faggot ass bitch even talking to me."

- On June 9, 2020, my supervisor removed me from the work schedule. She eventually told me not to come back to work.

- On June 17, 2020, I texted my General Manager and District Manager for a meeting to discuss the discrimination. During the meeting I complained about the discrimination to my General Manager and District Manager.

- I was terminated by McDonald's on July 4, 2020. I believe I was terminated in violation of Title VII of the Civil Rights Act of 1964.

ECF No. 53-1, Ex. 16 at 154. In this case, Plaintiff alleges that Ms. Gamble called him a "faggot" and that Ms. Gamble also referred to him as a "faggot" to other McDonald's employees and started a rumor that Plaintiff wanted to have a sexual relationship with another male McDonald's employee. ECF No. 1 ¶¶ 15-17. A careful review of Plaintiff's EEOC complaint and the complaint in this action makes clear that Plaintiff is describing the same type of sex-based discrimination in both matters. Plaintiff also implicates the same individual, Ms. Gamble in both his EEOC complaint and the complaint in this case. *See* ECF No. 53-1, Ex. 16 at 154; *see also* ECF No. 1 ¶¶ 15-17. Given this Plaintiff's allegations do not "exceed the scope of the EEOC" charge of discrimination. *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 236 (4th Cir. 2022). And so, Plaintiff has exhausted his administrative remedies regarding his hostile work environment claim because McDonald's has been put on reasonable notice of Plaintiff's allegations in this litigation. *See Walton*, 33 F.4th at 174.

2. **Plaintiff Cannot Establish That Ms. Gamble's Alleged Conduct Was Severe Or Pervasive**

While the Court is satisfied that Plaintiff has exhausted his administrative remedies for his hostile work environment claim, McDonald's persuasively argues that the undisputed

9

material facts in this case show that Plaintiff cannot prevail on this claim, because he cannot establish that Ms. Gamble's conduct was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment.[2]  To prevail on his hostile work environment claim, Plaintiff must show that there is: (1) "unwelcome[] conduct"; (2) "that is based on his sex and/or race"; (3) "which is sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment"; and (4) "which is imputable to" McDonald's. *See Okoli*, 648 F.3d at 220.  The Court agrees with McDonald's that the undisputed material facts in this case show that Plaintiff cannot establish that Ms. Gamble's conduct was severe or pervasive as to alter the conditions of his employment and to create an abusive work environment.  *See id*. at 220.

       The Fourth Circuit has held that a hostile work environment must "not only [be] subjectively hostile, but also objectively" hostile.  *Roberts*, 998 F.3d at 118 (citation and quotation marks omitted).  The United States Supreme Court has also held, when determining if an environment is hostile, courts must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (citation and quotation marks omitted).  And so, courts within the Fourth Circuit have generally held that "[t]he Court may only consider acts of harassment of which Plaintiff had knowledge" when evaluating the merits of a hostile work environment claim.  *See Parks v. Louisiana-Pac. Corp.*, 400 F. Supp. 3d 393, 407 (W.D.N.C. 2019) (holding the "[p]laintiff . . . failed to produce non-hearsay evidence that the Court may consider at the summary judgement stage for several incidents he cites in support of his claim"); *see also Daso v. Grafton School, Inc.*, 181 F. Supp. 2d 485, 492 (D. Md. 2002)

---

[2] McDonald's also argues that Plaintiff cannot prevail on his hostile work environment claim, because he cannot show that Ms. Gamble's conduct was unwelcomed. ECF No. 45-2 at 9.  In this regard, the parties disagree about whether Plaintiff sufficiently informed his employer that Ms. Gamble's conduct was unwelcomed before he filed an informal complaint with human resources on June 17, 2020.  ECF No. 45-2 at 11.  Plaintiff points to evidence to show that he informed Ms. Gamble that her conduct was unwelcomed on June 5, 2020, when they had an altercation. ECF No. 53 at 13.  Given this, there is a factual dispute in this case about when Plaintiff informed his employer that Ms. Gamble's conduct was unwelcomed.  *Roberts*, 998 F.3d at 117 (Conduct is unwelcomed when it "continues after the employee sufficiently communicates that it is unwelcome."); *see also Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 558 (D. Md. 2006) (noting Plaintiff's "own behavior" is relevant in the analysis of whether Plaintiff communicated the behavior is unwelcomed).

("Events which occurred without the knowledge of Plaintiff could not have contributed to his perception that the workplace was hostile.").

In this action, Plaintiff alleges that M. Gamble's alleged discriminatory conduct is severe or pervasive because: (1) on June 5, 2020, Ms. Gamble called him a "faggot" to his face; (2) Ms. Gamble started a rumor that Plaintiff wanted to have a sexual relationship with another McDonald's male employee on June 16, 2020; and (3) Plaintiff was told by other McDonald's employees that Ms. Gamble referred to him as a "faggot" on two occasions. *See* ECF No. 1 ¶¶ 15, 16; ECF No. 57 at 2.  But Plaintiff acknowledges that he has no personal knowledge of Ms. Gamble's alleged comments about him to other McDonald's employees. *See* ECF No. 1 ¶¶ 10, 12; *see also* ECF No. 45-4, Ex. B, (Plaintiff's written statement admitting that, he was not directly called a "faggot" by Ms. Gamble); *see also* ECF No. 45-3 Ex. A, Knott's Dep. 185:9-11 (Plaintiff testifying he did not hear Ms. Gamble in his deposition); *see also id.* at 188:13-17 (Plaintiff admitting he was not present when Ms. Gamble made the comments).

Plaintiff also acknowledges that he has no personal knowledge that Ms. Gamble started the rumor that he wanted to have sexual relations with a male McDonald's employee. *See id.* at 187:5-188:17 (acknowledging that a "Tyler" told Plaintiff about the alleged rumor and that "Tyler" told Plaintiff that Ms. Gamble started the rumor).  Because Plaintiff concedes that he had no personal knowledge of this alleged discriminatory conduct, the Court cannot consider this evidence when evaluating whether the alleged conduct in this case was severe or pervasive.  *See Parks*, 400 F. Supp. 3d at 407; *see also Daso*, 181 F. Supp. 2d at 492.

The remaining evidence before the Court regarding Ms. Gamble's alleged discriminatory conduct is not sufficient to show that this conduct was so severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive work environment.  As discussed above, the Fourth Circuit has considered the frequency of alleged discriminatory conduct in analyzing whether an employer's conduct is severe or pervasive for the purposes of a hostile work environment claim.  *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (citation and quotation marks omitted); *see also E.E.O.C. v. Fairbrook Med. Clinic*, 609 F.3d 320, 328-29 (4th Cir. 2010) (reversing the district courts summary judgment in part because there was evidence that the employer "frequently commented" on the size of the Plaintiff's breasts, "frequently talked about 'oral sex,'" and repeatedly used terms like "slut" and "cunt" in the workplace, in addition to other allegedly sex-based harassing behavior).  The Supreme Court

has also held that, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, Plaintiff identifies a single incident of which he has personal knowledge, where Ms. Gamble called him a "faggot" to his face on June 5, 2020, to support his hostile environment claim. *See* ECF No. 53 at 14; *see also* ECF No. 53-1 at 108. This isolated incident is not sufficient to establish a hostile work environment. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (Courts must look at "all the circumstances, including the frequency of the discriminatory conduct . . . and whether it unreasonably interferes with an employee's work performance.)

Given this, the undisputed material facts in this case show that Plaintiff cannot establish that the conduct at issue in this case was so severe or pervasive as to alter the conditions of his employment and to create an abusive work environment and prevail on his hostile work environment claim. *See Okoli*, 648 F.3d at 220. And so, the Court GRANTS McDonald's motion for summary judgment on this claim.

### B. Plaintiff Cannot Prevail On His Retaliation Claims

The undisputed material facts in this case also show that Plaintiff cannot prevail on his retaliation claims. To prevail on his retaliation claims, Plaintiff must show that: (1) he "engaged in protected activity"; (2) "his employer took an adverse action against him"; and (3) "a causal relationship exist[s]" between his protected activity and the employer's adverse action. *Roberts*, 998 F.3d at 122. If Plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Id*. If the employer provides such a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

#### 1. Plaintiff Cannot Show A Causal Relationship Between His Removal From The Work Schedule And His Protected Activity

Plaintiff alleges in this case that McDonald's retaliated against him in two ways. First, by removing Plaintiff from the McDonald's work schedule on June 9, 2020. ECF No. 1 ¶ 9;

ECF No. 53 at 5.  Second, by terminating his employment on July 2, 2020.  ECF No. 1 ¶ 31; ECF No. 53 at 17-20.

McDonald's persuasively argues that Plaintiff cannot prevail on his retaliation claim based upon removal from the McDonald's work schedule, because he fails to establish a causal connection between this action and his protected activity.  Plaintiff alleges that he was removed from McDonald's work schedule on June 9, 2020.  ECF No. 1 ¶ 9; ECF No. 57-1 ¶ 11 (McDonald's disputes the admissibility of the screenshot text messages).  Plaintiff also alleges that he complained to McDonald's human resources department and to Mr. Baires about Ms. Gamble's alleged discriminatory conduct on June 17, 2020, several days after he was removed from the work schedule.  *See* ECF No. 53-1, Ex. 7 at 118 (screenshot of text messages between Plaintiff and human resources); *see also* ECF No. 57-1 ¶ 8 (McDonald's disputes the admissibility of the screenshot text messages.).  Plaintiff filed his charge of discrimination on August 17, 2020, again, after he was removed from the work schedule.  ECF No. 45-1 at 6.  Given this, Plaintiff fails to identify any protected activity that he engaged in *prior* to June 9, 2020, to show that his removal from the work schedule is causally connected to his protected activity.  *See generally,* ECF No. 53 at 17-20.  Because Plaintiff cannot establish a causal relationship between his removal from the work McDonald's work schedule and  his protected activity, the Court GRANTS McDonald's motion for summary judgment on this claim. [3]

### 2. Plaintiff Cannot Show That The Reason For His Termination Were A  Pretext For Discrimination

Plaintiff's remaining retaliation claim, based upon the termination of his employment, is also problematic.  To prevail on this claim, Plaintiff must, among other things, be able to  rebut evidence put forward by McDonald's to show that its legitimate non-discriminatory reasons for terminating his employment, by demonstrating that McDonald's purported non-retaliatory reasons were a pretext for discrimination.  *See Roberts*, 998 F.3d at 122.

---

[3] When determining if summary judgment is appropriate, Plaintiff  "carries a heavy burden of presenting evidence upon which a reasonable fact finder could find in his favor on each of the element."  *Joiner v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 400, 408 (W.D.N.C. 2000).  When a plaintiff "fails to address (let alone rebut) any of the[] facts in his response to the motion for summary judgment, they are taken as uncontroverted for purposes of deciding the motion for summary judgment." *Catalan v. House of Raeford*, 17 F. Supp. 3d 520, 525 (E.D.N.C. 2014) (citing *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir.1993)).

In this case, McDonald's argues that it terminated Plaintiff's employment due to Plaintiff's failure to attend work after he was reassigned to McDonald's Route 5 restaurant. ECF No. 57 at 12. The parties agree that Plaintiff did not report to work at the Route 5. *See* ECF No. 45-3, Ex A. at 9, at 107:10-108:4; *see also* ECF No. 57 at 12. Notably, the general manager for the Route 5 McDonald's, Lavonda Spann, states in her sworn declaration that new employees at the Route 5 McDonald's will typically meet with the general manager and have orientation upon starting work. ECF No. 45-9, Spann Decl. at 3. Ms. Spann also states in her declaration that Plaintiff "failed to show up for orientation" on or about June 29, 2020. *Id*.

Ms. Spann also explains that she terminated Plaintiff's employment after he failed to report for orientation and did not contact her. *Id*. And so, the undisputed material facts show that McDonald's has advanced a legitimate non-discriminatory reason for terminating Plaintiff's employment—failure to report to work.

Plaintiff argues that the stated reasons for his termination were pretextual, because: (1) Mr. Baires did not place him on the schedule for the Route 5 McDonald's restaurant to complete his transfer to that location and (2) Mr. Baires terminated his employment after becoming aware of his complaint to McDonald's human resources department. ECF No. 53 at 19-20. But Plaintiff advances no evidence to support this argument. *See generally, id*. In fact, the unrebutted evidence before the Court corroborates McDonald's argument that it terminated Plaintiff's employment because Plaintiff failed to report to work after being transferred to its Route 5 restaurant. *See* ECF No. 45-3, Ex. A, Knott's Dep. at 107:10-108:4 (the following exchange occurred during Plaintiff's deposition: "Q. You knew Route 5 was the location? A. Yes. Q. You knew where Route 5 was? A. Yes. Q. You knew to go to Route 5? A. Yes. Q. You never went to Route 5 [] A: No.").

Because Plaintiff advances no evidence to show that the stated reasons for his termination were a pretext for retaliation, the undisputed material facts in this case show that Plaintiff cannot prevail on his retaliation claim based on the termination of his employment. And so, the Court GRANTS McDonald's motion for summary judgment and DENIES Plaintiff's remaining retaliation claims.

**V.  CONCLUSION**

In sum, the undisputed material facts in this case show that Plaintiff has exhausted his administrative remedies.  But, Plaintiff cannot prevail on his hostile work environment claim because he cannot show that the alleged discriminatory conduct in this case was severe or pervasive.  The undisputed material fact also show that Plaintiff cannot prevail on his retaliation claims, because, he can neither show that he engaged in protected activity before being removed from the McDonald's work schedule, nor that McDonald's stated reasons for terminating his employment were a pretext for discrimination.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** McDonald's motion for summary judgment; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

15